181965, City of Norris, Olin, and Carl Steinhagen v. The Town of Cicero, Illinois, Women's Rights Commission. Hi, do you want to step up, please, and state your name and spell your last names? Thank you, Your Honor. Jeffrey Friedman, for the opponents. Good afternoon, Your Honors. Assistant Attorney General Carson Griffiths, and it's G-R-I-F-F-I-S for the state respondents. Great. You each have 20 minutes. You don't have to use it all. And you want to reserve some of it? Yes, I do, Your Honor. How much do you want to reserve? Five minutes. Okay. And then finally, the microphones are just for recording, so you've got to keep your voices up. Thank you. Thank you. Good afternoon. May it please the Court, my name is Jeffrey Friedman, and I'm here on behalf of the appellants Theodore Colin and Mark Steinhagen. In this case, the ALJ found, and then the Human Rights Commission adopted the finding, that Mr. Steinhagen met his termination. However, the issue before this Court regarding Steinhagen is whether the reasons articulated by the town of Cicero for terminating Steinhagen were pretextual or otherwise unworthy of belief. The first reason given by the town for Mr. Steinhagen's termination was that his position was eliminated. The ALJ made the following factual findings in paragraph 24. After complainant Steinhagen's termination, he was replaced by Dominic Buscemi, paragraph 25. Mr. Buscemi is younger than complainant Steinhagen. These two factual findings do not support the ALJ's legal conclusion that there were legitimate nondiscriminatory reasons for terminating Steinhagen and demonstrate that the town of Cicero's reasons were pretextual. The case law is clear when an employer gives contradictory reasons for its employment actions, or if the employer changes its story, that constitutes evidence of pretext, and we cite the Mullen case in our brief for that proposition. The next — And the question really is that with any case, different issues have different standards of review. And if we are reviewing factual findings of the administrative agency, we're — to some extent, those facts — we're bound by those facts unless those facts aren't against the manifesto. To the extent that we're dealing with the ultimate questions in the case, you're probably correct that the standard is clearly wrong. So now the question is the administrative agency made certain findings of fact, which you just mentioned. And the question becomes whether or not those findings of facts are against the manifesto. That's the standard as to the factual findings. The standard as to the ultimate question would be whether or not the administrative agency is clearly wrong. You don't make that distinction in the brief. Neither do they. But I want to just let you know how — Appreciate that. We do note that we are not challenging any of the factual findings made by the ALJ that were then adopted by the commission. We're comfortable with those findings. I'm going to return to the second rationale provided by the town for the termination of Mr. Steindegen, and this also applies to Mr. Colin, was that they were named in a sexual harassment lawsuit. This rationale was only raised after the present age discrimination case was filed. The record demonstrates that Colin and Steindegen were never admonished about having been named as defendants in the underlying Delgado sexual harassment lawsuit. Do they have to be admonished? What's the law say they have to be admonished? Correct. They do not have to be admonished, but we believe it is pertinent to attack the rationale given by the town. At the time the lawsuit was filed, they were never blamed. They were never admonished. And most significantly, town president Larry Dominick testified that they both offered their resignations at that time, and Mr. President Dominick refused to accept the resignations. Yes, but later on, members of the board, he said, were not as happy maybe with the individuals as he might have been. So he felt pressure, or he had a feeling, you know, and he went along. So? Well, I think our point is... Where does that show age discrimination? Well, it shows pretext. It shows unworthy rationale. If somebody is truly being terminated for being named in a federal lawsuit, sexual harassment lawsuit, and they, when named, are offering their resignation, but at the time that that resignation is offered, it's refused. But sometime later, it is now alleged that that is the reason... But at the time, they were working at the same facility as the complainant was. She was gone. She could have come back, right? So they were in a different facility. So maybe there was no reason at that time. I mean, that makes sense. There was no reason to terminate them then. The complaint case was just filed. Do you have to terminate it? They should have accepted it, you say? No, they didn't have to accept the resignation. I will agree that there was no obligation to do so, but I do believe it undermines the legitimacy and the believability that if, at the time that the allegations are made against Cohen and Stanagan, they go to the president and say, we're offering our resignation if the board deems it appropriate for us to leave. See, that fact tends to work against you, I think, because if it were pretextual and the goal was to get rid of them because they're too old to be around, why not accept their resignations right away? Their resignations were not accepted. Because, in fact, just so that the facts are clear, what he said to them is that I think you should fight this. You're leading that up. So, therefore, that kind of goes against the contextual argument, I think. Well, I think the key issue, and you're absolutely correct, not only did President Dominick decline to accept the resignations, but he indicated that he didn't believe the allegations were meritorious, and he encouraged them to fight. The point is the pretext here. This case is about pretext. They say one thing, and their actions are contrary to what they're saying. Right, but the issue, again, when we talk about pretext is whether or not they made something up, but they really wanted to get rid of them because of their age. That's what we're talking about, right? Correct. So, therefore, if the resignations were offered and he said, well, no, I'm not going to take your resignations. I think you should fight. If he wanted to get rid of them for their age, that was a perfect opportunity to do so. Ultimately, the board, there was some noise that the board didn't want them around anymore. Therefore, what ultimately happened is that the town president, Mr. Dominick, President Dominick, did not reappoint them. Well, that would be the third rationale offered by the town for their termination, and likewise, we believe that the rationale and the facts and the reasoning of the town in explaining that their termination was because they were not reappointed doesn't stand up. It's not. There are too many holes in it, and that is, under the law, evidence of unbelievability and pretext. When we talk about their failure to be reappointed, number one, these are two individuals who worked at the town for 26 and 30 years respectfully. They had been reappointed for many, many years prior to the alleged June 2012 board meeting in which they weren't reappointed. At that board meeting, allegedly, they were now reappointed, but they had not previously been told they would not be reappointed. Well, again, they don't have to be told, so that's not a pretext. The fact that they had been retained before is not in the – what happened in the past is really irrelevant, it seems to me. What is relevant is that at the time that they weren't reappointed, something else had happened, and there was some board members that were upset because of the lawsuit about sexual harassment. That doesn't sound pretextual to me. Well, I would think that if that is indeed the reasoning, if the board members and ordinary President Dominick really believed that Mr. Steinhagen and Mr. Cohen should be terminated because they were named as defendants in this sexual harassment lawsuit, they simply should have been told, you two gentlemen are going to be terminated because you've been named as defendants in this federal lawsuit. That was never done, and what we examined – Because the decision hadn't been made yet. Remember, the town president made that decision later, after the town president learned that the board did not agree with this reappointment, and if I understand the facts correctly, the board needed to approve the reappointment. It was a board action, but let's not also take this out of context. The timing of the board meetings – I'm sorry? The president makes a recommendation. The president makes a recommendation. And, by the way, the president had testified that in his entire term as president, all of his recommendations were accepted. So it seemed unbelievable, and again, evidence of pretext, that under these circumstances, for some reason, he believes that he could not have recommended the reappointment because despite all prior recommendations that he had made in the past, this one would not be adopted by the board. But maybe he didn't make recommendations in the past when he knew the board was going to go against him. You know, I mean, just like in this case. Yeah, he didn't get beaten on this one, but he didn't put it forward. There was no doubt. It sounded irrelevant. It's not in the record. That's the way the Speaker of the House and our Congress, that's the way they do it all the time, right? You're not going to call the legislation if you don't have a vote. Let's also look at the timing of this board meeting. It takes place in June of 2012. Mr. Steinhagen had been told prior to that date that his position was eliminated, and then Mr. Buscemi took that position. So what I'm here to clarify, for your honors, is this notion of pretext, because we think that there are so many reasons given by the town for their termination, and the legal structure for establishing an age-discrimination case is clear. The prima facie case is set forth. There's no question about Mr. Steinhagen meeting that prima facie case. Then the burden shifts to the respondent, the employer, to articulate legitimate non-discriminatory reasons. If they do so, then the complainant has the opportunity to demonstrate pretext or unbelievability. Once that is done, the complainant meets his burden. And the fact that the town has provided three reasons. I don't see how the town has provided three reasons. They all sound like the same to me. Well, I do. They all have to do with the sexual harassment. Well. Let's go through the three. Let's go through the three. Mr. Steinhagen, positions eliminated. Mr. Steinhagen. Well, there was a different position, wasn't there? It was eliminated, wasn't it? That's not true. The factual record is clear. Dominic Buscemi filled Steinhagen's position. Dominic Buscemi is younger than Steinhagen. He had the same job. It sounded like the same title. True. Okay. My understanding of the fact is it's different. The job requirements were different. I don't believe that's accurate. I believe it is the same job that Mr. Buscemi filled that he's younger. You testified it was the same job. I believe that was in the factual findings of the administrative law job. Yeah. That's what I just said. I'm sorry. So that was a factual finding of the administrative law judgment. True. And I don't think that question was answered. The standard of review on the different issues. Every issue has a different standard of review. And if it's a factual finding of the administrative law judgment, we do give deference to those factual findings. And if I'm not, if I'm, but I'm understanding that correctly, that supports Mr. Steinhagen's contention. The finding by the ALJ was that complainant Steinhagen was replaced by Dominic Buscemi. Mr. Buscemi is younger than Steinhagen. That's right in the administrative law judge's opinion where he sets forth his factual findings. I know he's younger. Yeah. But does he say it's the same job? Yes. I mean, I'm not contesting that it's definitely he's younger. I mean, that's not what I was saying. I was saying whether it was the same job. And I believe the record indicates that it is. Yes, Your Honor. The judge made a finding that it was the same job. Yes. In fact, there was further testimony that the assistant prime marshal structure was being reorganized. And, frankly, that testimony at the hearing ultimately demonstrated that before this so-called reorganization, there were six assistant prime marshals. And after the so-called reorganization, there were also six assistant prime marshals. The rationale to say, Mr. Steinhagen, you're being terminated because your position is being eliminated and then have it filled by another individual, in this case a younger individual, legally meets the legal test necessary for Steinhagen to demonstrate discrimination. Again, prima facie cases met, articulated reasons are given, and they're demonstrated to be unworthy of belief, hence pretextual. We could continue along with the other two reasons. Again, being named as defendants in the sexual harassment case when somebody offers a resignation, if that is truly the reason that you believe that termination should occur, then I think it's only logical and it's unworthy of belief to say something to the contrary. When that individual who is sued offers resignation, if you truly believe that's the underlying reason, then accept the resignation. Would that be considered an admission in the federal case? I mean, because this is all in the context of a federal case. Right or wrong, we all know people take positions to improve their position in there. You know, the reality is, and this perhaps is outside of the record, a Title VII sex harassment case is against an employer. That is who is governed by the Anti-Sexual Harassment Federal Law. The fact that Steinhagen and Coleman were named, in our opinion, was a moot point. They are not culpable parties under the Title VII structure. Employers are responsible if found to have been, you know, meet the standard asserted by the plaintiff. A co-employee, or for that matter a supervisor, is not a culpable party under Title VII. So while the rationale that they were named as defendants in many ways legally is not sustainable, we didn't even attack that because they could have misconstrued what the law is. But the point that we're trying to establish is the rationale that they give, it collapses because it's a third reason that they're given for their termination, and it just doesn't stand up to scrutiny. We think that if you truly wanted to get rid of Steinhagen and Coleman because they got named, you would write a letter to them or you would advise them. You wouldn't say you're not going to reappoint them, and you wouldn't say it's your position, Regrettably, gentlemen, you too have been named as defendants. We have to terminate you. That never occurred. It's real easy, as your honors know, for an employer to terminate an employee, but what they can't do and what constitutes a violation of the law is when they give pretextual reasons, and that is the basis on which a complainant has a valid discrimination case, whether it be age, race, or gender. So while we think that it is not just significant, by the way, that each of the reasons proffered by the town doesn't stand up, in our opinion, to even minimal scrutiny, the mere fact that there are multiple reasons also in and of itself suggests unworthiness of belief. I want to go back to my point. I found what I was looking for. Bruce Simney testified he did not assume Steinhagen's former duties even though his title was a saint. He testified to that. That's in the record, okay? I can give you a record. It's in the brief. That's what I was thinking about. So, again, he testified to that. He says the duties aren't a saint. You can't – we're not talking about the facts. The facts are there. So, again, I mean, the age thing, yeah, he's younger. But he testified to that, and I don't see how, then, that that's not a pretext. Well, I would point out that his testimony is not necessarily dispositive on that issue.  You're not attacking the facts. You're not attacking that evidence, right? Correct? We are. You're correct. We are. Well, we're not challenging the factual findings made by the ALJ that were then adopted by the commission, correct? I don't, with all due respect, want to say that the mere statement that you've quoted from the record that Dominic Buscemi, the man who is assuming this position, is dispositive on the issue if indeed – is assuming all of the formal responsibilities of Mark Steinlegan. There are other ways of ascertaining whether that's true. His statement that he isn't isn't necessarily controlling because maybe the fire marshal himself should be the one speaking as to what role the various assistants are playing once Steinlegan is removed. Well, there was opportunities to cross-examine and so forth. So, you know, the fact is it's there, and there's no reason why we can't rely on it. Or, a bit more specifically, that the town can't rely on it. Again, I think that it's certainly within the scope, but I don't think that a new person, Buscemi, who is assuming a role that he hadn't previously held, is necessarily the authority on what that role is when there was other testimony that stated that Steinlegan's position eliminated, replaced by Buscemi. Well, I think we're talking about a couple of years. I mean, when this all happened, years had passed, right? I mean, there had been some time between when Buscemi took the position and when he testified. True. So, it's – I hear you. Okay. We're pretty much – if you want to reserve any, time's up. Okay. I appreciate that, Your Honors. Thanks. And just to be clear. Yes. The Commission found – the Administrative Law Judge, of course, the Commission adopted their decision that the pretextual arguments were unbailable. So, in that, the clearly erroneous standard applies to that finding, but as to the finding of facts, it's manifested. I would agree with that statement. Neither of you argued that, right? I believe that's accurate. Correct. Both of you went somewhere else with it. You both were at extremes, and it's not there. Thank you. Good afternoon, Your Honors. Again, Assistant Attorney General Carson Griffiths on behalf of the State Respondents. May it please the Court. I'd like to begin today, as the Court honed in on, the central issue in this case is pretext, and whether the Commission's finding that petitioners failed to prove pretext was against the manifest way to the evidence. So, a point that Justice Walker, you honed in on, to prove age discrimination in this case, petitioners had to show two things with regard to the pretext question. First, they had to show that the town's reasons for its employment decision were not true, and they also had to show that age was the real reason for the actions. So Plaintiff's counsel is, or excuse me, Petitioner's counsel, is arguing that there are all these inconsistencies and problems with the town's reasons, but that's not enough under the Act. He has to show that it was a cover, essentially, for an age, for a decision based on age discrimination. So, just the fact that there might be some inconsistencies isn't enough, especially in light of the standard of review in this case and the procedural posture. So, I'd like to highlight the fact that a finding of no pretext is reviewed against the manifest way to the evidence standard, not the clearly erroneous standard. And that is from the Zadaraka decision of the Illinois Supreme Court, where they compared a finding that there was no pretext to a credibility question. Essentially, does the court believe the town's reasons for taking the actions it did, or does it believe that age was the real reason? So, what do you say are the reasons? I mean, there's two reasons that are given, right? Right. So, let's go through the reasons. Right. So, the commission's finding was that the reason for the town's decision to initially transfer petitioners was to create a work environment in which Ms. Del Medeo could feel comfortable, safe, and free of sexual harassment. And that finding was supported by the testimony of both Inspector General Klosak, who investigated the allegations, and Town President Larry Dominick, who both testified that her allegations of sexual harassment motivated the town's decisions. So, the initial transfer was designed to encourage Ms. Del Medeo to return from medical leave. She went on medical leave on October 18th, 2010, and just days after that, both of the petitioners were transferred. And that testimony by Klosak, saying that that was the reason for doing it, is also supported by the transfer orders themselves signed by the town's Human Resources Director, which both said, we're transferring you because of the seriousness of the allegations, not because of your ages or anything like that. So, why didn't they accept the termination? They didn't accept the termination for a couple of reasons. The resignation. Right. So, I think the timeline has gotten a little muddled. The meeting between President Dominick and petitioners occurred in November 2010. That was nearly a year before Ms. Del Medeo even filed a federal lawsuit in October 2011. So, at that time, he said, you know, I believe that you're not guilty of anything, and I'm not going to accept your resignations. A whole year passes, the lawsuit's filed, and then May 2012, when the meeting is coming up to reappoint them, or recommend them for reappointment, town president Dominick talks to the other members of the Board of Trustees, and they say, we're not happy with this federal lawsuit. We don't like these guys' attitudes, was the word he used. And he thought, there's going to be too much pushback, so I'm not going to recommend them for reappointment. So, that's why it was just a different time. The circumstances were different. The federal lawsuit didn't exist at that time. And that also goes to the reason for ultimately declining to recommend them for reappointment, that they weren't happy about the lawsuit. And, again, because there's evidence to support the finding of no pretext, that alone, that testimony alone is enough to uphold the Commission's factual findings. So, it's also important to note that petitioners really presented no evidence in this case that age was a reason for any decisions made. Well, with Steinhagen, there's an issue, because even the Administrative Law Judge found that there was an issue there. With respect to the Primal Fascia case, the Administrative Law Judge did find that Steinhagen established that because his position was eliminated and a younger individual was appointed to that position. To a similar position. Correct. Justice Hyman, you're correct in recounting Dominic Buscemi's testimony. He testified that the title was the same, our duties were different. And Ron Opolecki, who was the new Fire Chief appointed in May 2012, said, what I really did was shift the duties around. So, I moved Assistant Fire Marshal Steinhagen's duties to a different person. I forget his name, maybe Michael Loomis in the Fire Department. But I gave Buscemi the same title. But ultimately, all of that, whether he was appointed or not reappointed, that's all a factual determination. And again, we have Town President Dominic's testimony saying. You know, you realize that there are some federal cases that actually hold that whether or not a Primal Fascia case is established is a question of law. You do realize that, correct? I do realize that. However, specifically with the issue of a Primal Fascia case. You also realize that in Illinois, in this area of age discrimination, we do look to federal law. Correct. In terms of deciding what the law should be in Illinois. Correct. Perhaps ultimately whether all four parts of the Primal Fascia case are established would be an application of law to the facts. But when we're drilling down to the specific issue with respect to Assistant Fire Marshal Collins' Primal Fascia case, which is, I believe, what Your Honor is referring to. Because the Commission found that he was not able to establish a Primal Fascia case. The question there is whether there were similarly situated employees treated more favorably than Assistant Fire Marshal Collins. But why wouldn't it be a question of law if that's what the federal cases hold? Why is it different here? I disagree that the federal cases hold that the question of similarly situated is not a factual question. I should run all five of them for you and say it's a question of law. So what's different here? There is something different here. What is it? Well, I think that the – well, I point to decisions of this Court. The Lau decision from just last year that discusses it as a question of fact, the similarly situated analysis, and also the Loyal University decision, which is, granted, older, but that's also from this Court. And I think that the federal cases really highlight the fact that the similarly situated inquiry is fact-intensive because it requires consideration of all the factors why a certain employee would be considered to be similar or comparable to the plaintiff. But ultimately, that question, regardless of the standard of review here, there are three reasons why the Commission found that Collin could not prove his prima facie case, the first being the rank between Assistant Fire Marshal Collin and the three comparators he identified. Lieutenants Harvey Rand and Pazzynski were different. And second, that the severity of the alleged misconduct by Assistant Fire Marshal Collin was much greater than the alleged misconduct. Let's talk about the rank. How do we know that from the decision of the Commission, how do we know the rank was different? It's in the decision. But you and your brief talk about the unions and all that. Correct. I don't see that in their decision. It's not on the face of the decision. I agree. So the question is, the law is that an agency's decision must be upheld, if at all, on the basis of articulated, the basis articulated by the agency. The agency didn't articulate that basis. So why should we even consider that? Well, two points. Because the issue of union membership and non-union membership was all inextricably intertwined with the issue of rank at the hearing. At the hearing, but it's not articulated. There's this rule that if it's not articulated, we can't consider it. Where does that rule come from? Do you know? Why is that rule something that's been followed for? I'm not sure. I know that in the context of a circuit court, the appellate court can affirm on any basis in the record and all that. But this is different. Right. It's different. Why is it different? It might be different because. You don't know. I don't know off the top of my head. I'm guessing. Expertise, maybe. Maybe expertise. Ultimately, it doesn't matter in this case for a couple of reasons. First, the more important point here is that the severity of the allegations against Assistant Fire Marshal Collin were appreciably different. But that's the second. There's two prongs. Right. But you mentioned both. I did. And so I understand the second one. I'm asking about the first one. Right. The first one, I would say that the agency did articulate its reason here. The commission wrote, or excuse me, the commission adopting the ALJJ's order wrote, there's a difference in rank here. And if you read the transcript, every time rank is brought up at the hearing, it's because the difference in rank accompanied a difference in union membership. And that meant different employment policies applied. So I think in the context of this case, really you can infer what the ALJ was getting at was a difference in the union membership, because that was really what the hearing was all about. It wasn't just saying, well, the semantic difference between a lieutenant and assistant fire marshal is what's determinative. It was that there were different – the town couldn't just discipline lieutenants without going through a formal process. I'm in trouble with that because for – since even I was in law school, just for the rule. And I'm trying to understand, you know, how do we then determine when we can – what you're doing is – and now it must mean that union – that's all involved, is what you're saying. But the black leather law doesn't permit us to look at that. Well, forgive me for kind of stating this, but I also believe that there are cases standing for the proposition that an agency can make implied findings. It doesn't have to say every single bit of its thinking before it reaches an ultimate conclusion. So here the ultimate conclusion was you couldn't establish a prima facie case. And there were two reasons for that. The rank – all the evidence at the hearing suggested the rank was important because the discipline policies – excuse me – were different. And then the second reason being the misconduct. So I understand – Well, the fact that they're different is the reason, not the misconduct. The allegations are misconduct. The misconduct. Right. Not everybody, but the people named. Right. The misconduct. Right. So the point being that – But what you're saying is that the conduct was different. Yes. And that's exactly what Klosak testified to when he said this is why we decided to transfer them. It's because the allegations were more serious. So on that factual finding alone, this Court can affirm the decision of the Commission that Assistant Fire Marshal Collin didn't establish his prima facie case. We can ignore the rank? It can because the importance of the severity of the misconduct would differentiate them. And as we're all established in the case law cited in the briefs, that to have a comparator be similarly situated, they have to be accused of similar misconduct. Otherwise, they're just not comparable. And even more importantly than that, this Court can affirm the Commission's entire decision on the basis – But as courts also say, it makes a difference in terms of who they report to. Different supervisors make different decisions, and they don't use that as a basis to determine. That's correct. That wasn't fully fleshed out at the hearing in this case, but I agree that that's also another thing that could differentiate a comparator from a plaintiff in a specific case. Just returning briefly on the issue of whether Assistant Fire Marshal Steinhagen was not reappointed or whether he – his position was eliminated. Ultimately, again, we're getting to inconsistencies in facts or contradictions in facts at best. And under the – against the manifest weight of the Evidence Standard Review or even the Clear Air Standard Review, which is also deferential, this Court shouldn't second-guess those factual determinations. It was up to the Commission to weigh the evidence. And there's evidence showing that Town President Dominick decided not to reappoint them because of the lawsuit, and that's sufficient to uphold the Commission's decision. Now, if we were to tell you, though, that as to Colin, the Standard of Review is not the manifest weight of the evidence, this Federal court argued that it's the Standard of Review in some situations to know whether or not a prima facie case is established. And I will tell you that in Illinois, I believe it's clearly erroneous. The – if we were to tell you that that's the standard, has Colin met that standard? No, for the same reasons that's – I'd like to hear why Colin has not met that standard. We're talking about just as to the prima facie case? As to the prima facie case. But the judge did go on to say that even though I find he didn't establish a prima facie case, he still looked at pretense. Right. So tell us why. With respect just to the prima facie case, I would go back to the same points I was just discussing with respect to the differences in rank and the differences in the severity of the allegations of misconduct. Those are the two points that set Assistant Fire Marshal Colin apart from Lieutenants Harvey, Rand, and Pijinski, who are all accused of making inappropriate comments or lewd comments but not directly requesting a sexual favor like Assistant Fire Marshal Colin was alleged to have done. So that's why he couldn't establish his prima facie case. But more broadly, as you pointed out, regardless of the prima facie case here, they couldn't prove pretext. They couldn't prove that the town made up reasons to cover for age discrimination and that age was the real reason for the town's actions here. And that finding under Zadaraka is reviewed under the Manifest Rate of Evidence standard because it's essentially a credibility question. And I think what goes to that point is petitioners mentioned the Mullin decision in the Seventh Circuit about how inconsistencies may be evidence of pretext. Mullin was a summary judgment case. So there's plenty of federal decisions at the summary judgment stage which say, well, we're going to view all the evidence in the light most favorable to the plaintiff. If there's some inconsistencies in the reason for the employer's actions, that should go to a jury and a jury should decide it. Again, this case did go to a fact finder. The fact finder said, I believe that the town's decisions in this case were not motivated by petitioner's ages in any way. And that finding should be upheld because this court was at deference. So unless this court has any other questions, for those reasons and the reasons stated in our brief, we ask that you affirm the commission's decision. Thank you very much. Thank you. Your Honor, I first want to address what Justice Hyman had asked about Buscemi and did he in fact assume the very duties that Steinhagen left. There is testimony in the record that he didn't, and I'm citing from Record 300-302, that he didn't know exactly what Steinhagen's duties were. Furthermore, there's testimony in the record that when asked what his duties were, he stated whatever fire marshal needed me to do. So I don't believe that it would be sufficient to rely on Buscemi's comment that, you know, he wasn't assuming Steinhagen's role. Indeed, the testimony is clear, the record is clear, Steinhagen's position according to the town's decision was eliminated and then filled by Mr. Buscemi. But Steinhagen was a fire marshal. He was an assistant fire marshal. True. And your argument is that Mr. Dominique Buscemi was also an assistant fire marshal. When he got put into that position to fill Mr. Steinhagen's position. True. Let me comment on this notion of the fact that both Cohen and Steinhagen were transferred out of headquarters because of the concern of Ms. Delgadillo to make her feel comfortable. Let's not lose sight of the fact that the other three individuals, since he, Rand and Harvey, they were not issued cease and desist letters. If the concern was we don't want these alleged sexual harassers to be present with Ms. Delgadillo, they should have issued uniformly cease and desist letters to all, not just pick on Cohen and Steinhagen. Indeed, the record is clear. There are many other adverse employment actions that were taken against Cohen and Steinhagen, such as stripping them of their duties, not giving them any meaningful work, taking away necessary equipment. The town did not even attempt to provide legitimate nondiscriminatory reasons. Isn't that an argument, though, that they're not comparators? Well, that is different. We believe that they are comparators, and it's persuasive authority that we cite that says when you're talking about a violation of a policy, you don't have to be clones. You're looking for comparators. All of these five gentlemen were accused of violating the same zero-tolerance, anti-sexual harassment policy of the town of Cicero. They were all accused of that. Their findings as to what the inspector general concluded was all the same. Nonetheless. But counsel argues that their comments were not sexual. Their comments were not stupid and things like that, as opposed to be upstairs in five minutes and tuck me in. Well, the record demonstrates that the sexual harassment policy was what Ms. Delgadillo complained about. But the city, the town, and the ALJ can still look at the comments that were made and the differences between those three individuals and the other two. I mean, you can't deny there's a difference. You can't deny it, but I don't think – I think there's a clear demarcation with regard to sexual harassment versus harassment. Well, they were accused of sex harassment. They could have been accused of just employee misconduct or inappropriate conduct for the workplace. They were accused under the very same provision within the anti-sexual harassment policy of the town of Cicero, which significantly zero-tolerance. So I, of course, don't disagree with Your Honor that there can be a difference in the nature of the conduct alleged. But for purposes of this case, the relevant point is it's zero-tolerance. Once you're accused of anything, you are accused of violating that policy. And that is what they all were accused of and all similar findings. Moreover, after those findings were made, it is not – it is pertinent, in our opinion, that both Coleman and Steinhagen continue to suffer adverse employee actions. They were not allowed to resume their duties. They were not returned to headquarters. The other three gentlemen who were also accused and also received similar findings of not sustained, they had no further adverse employment action. Indeed, the record demonstrates, the ALJ found, that not only were they not in any way adversely treated after the finding of not sustained, they were not adversely treated during the pendency of the investigation. Clearly, Steinhagen and Coleman were. And even if this court were to determine and were to find that the rationale for their terminations was not pretextual, we, of course, have argued that we've met that burden and showed that they were pretextual, we would urge this court to make a finding that all the other adverse employee actions that Coleman and Steinhagen suffered were – meet the – they meet their burden of proof with respect to proving age discrimination on those elements because, literally, the town did not even offer reasons. Hence, they haven't shifted the burden back. Once it was established, the prima facie case was met. Thank you, Your Honors. Thanks very much. Thank you again. Thanks for your work. We really appreciate it. And you'll be hearing from us soon. Thank you.